BARRY J. PORTMAN
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant BABERS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-07-590 CRB |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| v. | ) | |
| | ) | Hearing Date: February 20, 2008 |
| KENNETH BABERS, | ) | Time: 10:00 am |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

Defendant Kenneth Babers stands before this Court to be sentenced on his conviction for

unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Babers respectfully

submits this sentencing memorandum requesting that the Court follow the Probation Officer's

recommended sentence of forty months imprisonment.

**BACKGROUND**

**I.    Mr. Babers' Childhood Was Defined By Constant Abuse and Neglect**

As the Presentence Report ("PSR") illustrates, Mr. Babers' entire life has been defined by

the extreme abuse and neglect he suffered as a child. Mr. Babers' mother was only sixteen years

old when he was born and it is very clear from reading the PSR that – being a child herself – she

1   was in no position to raise her own child.  PSR ¶ 44.  Growing up poor and without any familial

2   support, the abuse of Mr. Babers began almost as soon as he was born.  Indeed, the situation was

3   so extreme that Child Protective Services ("CPS") has reports of the neglect that he suffered

4   starting when he was only two years of age.  At that time, his mother would "regularly bring him

5   to a local tavern, where he would remain for the day without a diaper change, that he was always

6   unbathed, emaciated, and at age two, did not speak." *Id*.  Additionally, his mother "would leave

7   the tavern with men and leave [Mr. Babers] at the tavern for others to care for him." *Id.*

8       Unfortunately, despite CPS's awareness of the problem, Mr. Babers remained in the care

9   of his mother and her abusive boyfriend.  This continued for many years, until he was removed

10  from his mother's home at age nine "after a police officer found [Mr. Babers] alone at home, tied

11  to a bed in a locked room." *Id.*  His removal from his mother's home provided only a brief

12  respite.  Despite the repeated indications of rampant and constant abuse in his mother's home,

13  Mr. Babers was placed back with her a short time later where he continued to be physically

14  abused by his mother's boyfriend. *Id.*

15      At age eleven, Mr. Babers was then placed in the home of his father, Kenneth Sanford.

16  *Id*.  This placement did not fare any better.  His father was also physically abusive and had a

17  reputation in their home and in their community for being violent. *Id.*  One day, in 1991, when

18  Mr. Babers was only fourteen years old, his father got extremely abusive one day and would not

19  stop beating up his sister and stepmother.  When the violence escalated to the point that his father

20  broke his sister's jaw, Mr. Babers' brother intervened.  He stabbed and killed their father in an

21  effort to stop the abuse. *Id.*  His brother was not charged with any crime since it was determined

22  that he acted in self-defense.

23      After this incident, Mr. Babers was placed in a series of group homes, none of which

24  provided him with the support, care and/or treatment that he desperately needed.  As a result, he

25  began a life in the streets, where he made poor decisions and constantly struggled to get by.  The

26  abusive and un-nurturing environment in the California Youth Authority did not help the

1    situation.  While Mr. Babers needed treatment and support, he was instead faced with further

2    tension and violence.  To this day, Mr. Babers continues to suffer as a result of the neglect and

3    abuse that he has suffered.  He has attempted suicide on at least two occasions and suffers from a

4    serious mental health condition that continue to be untreated.  PSR ¶ 49.  Nonetheless, he is

5    remorseful about his behavior and seeks treatment so that he can turn his life around and lead a

6    different life.

7                                    **DISCUSSION**

8    **I.    A Sentence of Forty Months Is Sufficient But Not Greater than Necessary to Fulfill
         The Goals of 18 U.S.C. § 3553(a)**

9
             The presentence report and plea agreement in this case calculate the final offense level in
10
     this case under the advisory sentencing guidelines at 17.  Since the presentence report concludes
11
     that Mr. Babers is in criminal history category V, the corresponding guideline range is 46-57
12
     months in custody.  A sentence of forty months, which reflects a sentence at the low end of the
13
     guidelines, less the time Mr. Babers served in state custody, is warranted here as it comports with
14
     the plea agreement and is sufficient but not greater than necessary to fulfill the goals of 18 U.S.C.
15
     Section 3553(a).
16
             Under Section 3553(a), the Court is to consider the "nature and circumstances of the
17
     offense and the history and characteristics of the defendant."  Additionally, the Court must
18
     consider the need for the sentence imposed (a) to reflect the seriousness of the offense, to
19
     promote respect for the law, and to provide just punishment for the offense; (b) to afford
20
     adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the
21
     defendant; (d) and to provide the defendant with needed educational or vocational training,
22
     medical care, or other correctional treatment in the most effective manner.  18 U.S.C. Section
23
     3553(a).  A sentence of forty months appropriately addresses all such considerations.
24
             It is indisputable that Mr. Babers has endured a traumatic childhood.  It is also
25
     indisputable that this traumatic childhood played a significant role in the instant criminal
26

conduct.  As the PSR notes: "In this instance, the defendant's neglectful and abusive childhood undoubtedly played a part in his later criminal history."  PSR ¶ 71.  The report goes on to conclude that he "appears to be suffering from a serious psychological disorder that needs ongoing treatment."  *Id.*  Accordingly, the most critical aspect of any sentence is to ensure that Mr. Babers receives necessary mental health treatment as recommended in the PSR.  A sentence above the low end of the guidelines will do nothing to fulfill the goals of Section 3553(a).  Instead, a low end guideline sentence less the time served in state custody, combined with a requirement that Mr. Babers receive mental health treatment will appropriately address the sentencing objectives of just punishment, rehabilitation, and deterrence, while also protecting the public from future crimes.  *Id.*

**II.     A Downward Departure is Warranted to Account for the Time that Mr. Babers Served in State Custody for the Same Offense Conduct**

As permitted under the plea agreement, Mr. Babers respectfully requests a departure below the low end of the guidelines to account for the six months and twenty-one days that he served in state custody for the instant offense conduct.

On March 18, 2007, Mr. Babers was arrested by the San Francisco Police Department for the instant offense conduct and placed in state custody.  On March 21, 2007, a felony complaint was filed in San Francisco Superior Court charging him with violations of California Penal Code Section 12021(a), for being a felon in possession of a firearm, and California Penal Code § 148(a), for resisting arrest.  On September 13, 2007, the instant federal indictment was filed against him charging him with one count of 18 U.S.C. Section 922(g)(1) for being a felon in possession of a firearm based on the exact same offense conduct that led to his arrest on March 18, 2007.  On October 9, 2007 – six months and twenty-on days after he was arrested – he made his initial appearance in federal court.  On October 15, 2007, the state complaint against him was dismissed by motion of the state prosecutor.

A six months reduction below the low end of the Guideline range is necessary to account

1  for the time that Mr. Babers has already served in state custody for the same offense conduct.

2  *See* Plea Agreement, ¶ 7.  He has been in custody for the instant offense conduct since March 18,

3  2007; however, because he was in *state* custody for the first six months of his incarceration

4  (March 18, 2007 - October 9, 2007), the only way to ensure that he is given full credit for the

5  time he has served is by reducing his sentence by the time served in state custody.  The Probation

6  Officer agrees that this reduction is appropriate.

7      Accordingly, Mr. Babers respectfully requests that the Court reduce his sentence by six

8  months below the low end of the guidelines to account for the time he already served in state

9  custody, as recommended in the Presentence Report.

10                                    **CONCLUSION**

11      For the reasons stated, Mr. Babers respectfully requests that the Court sentence him to

12  forty months as recommended in the PSR – a sentence at the low end of the guideline range less

13  the time he served in state custody for the instant offense conduct.

14  Dated: February 13, 2008

15                              Respectfully submitted,

16                              BARRY J. PORTMAN
                                Federal Public Defender

17
                                /s
18
                                JODI LINKER
19                              Assistant Federal Public Defender

20

21

22

23

24

25

26